The declaration was for harboring the slave from 1835 to 15 September, 1846; and the prayer of the defendants' counsel was for instructions upon two points. The first, that for the harboring which occurred before (207) 15 September, 1843, that is, three years before suit brought, the action was barred by the statute of limitations; and the second, that there was no evidence of any harboring after that day. The presiding judge declined giving the whole instruction, as prayed for, including both propositions. But he gave it as asked, in respect to the first point; and then he left the case to the jury on the second point with instructions that they might look to the antecedent acts of the defendants, and if they believed, from them, that the harboring was continued after 15 September, 1843, the plaintiff would be entitled to recover for such harboring as took place after that day. Such is my understanding of the case stated in the exception; and therefore it strikes me as not being precisely correct to say that his Honor had refused to apply the statute of limitations to the plaintiff's demand. For I consider that he did so in direct terms, to the full extent required by the party and the law; so that the jury were obliged to understand that they could give damages for only such harboring, if any, as actually took place after 15 September, 1843. The question, then, as it strikes me, is whether there was evidence of a harboring within that time. His Honor thought there was, because it might be inferred by the jury that the defendants had harbored the slave from 15 September, 1843, to 15 September, 1846, inasmuch as they had harbored him from 1835 to the autumn of 1842. So, the point is, as it seems to me, simply this: whether the previous harboring constitutes such circumstantial proof of a subsequent harboring as ought to have been left to the jury as competent to establish it. If it was competent, the verdict ought to stand, because it is the province of the jury to weigh and determine the effect of evidence, as enabling them to infer one fact from another, with this proviso, however, that the fact from which the other is inferred would be such as affords a fair *Page 154 
(208) presumption of the required fact. It is that proviso which raises the question of the competency of circumstantial evidence in any case, for it is a question of just reasoning, what inference may be made from an admitted or established fact. Therefore, if the fact sought cannot be rationally deduced from the circumstance relied on, the circumstance itself ought not to go to the jury, because its consideration cannot serve the justice between the parties, but may mislead the jury. Suppose, in this case, the declaration to have been only for the harboring from 15 September, 1843, so as to make the statute of limitations altogether inapplicable — which, indeed, is the state of the case under the opinion given on that point to the jury; the question then would be a naked one, whether the harboring laid would or could be established by the previous harboring. It is often a delicate point to determine what may or may not be justly inferred from particular premises; and persons will frequently differ upon it. When I see that a learned judge thought that a harboring up to the time of the action might be presumed, and that twelve gentlemen were able to affirm on their oaths its actual existence, because it had been practiced for several years before and down to 1842, I cannot but be somewhat diffident of my own conclusions to the contrary, and reluctant to disturb the verdict on that ground. But, as the law does not allow a question to be submitted to a jury without evidence, which means, also, with such evidence as, taken in the whole, will not fairly authorize a verdict in favor of the party offering the proof — in other words, evidence on which a judge must say he could not find a verdict — it seems to be the imperative duty of the Court here to reverse the judgment, when a case in that situation has been left to the jury. Now, it seems to me, notwithstanding the previous connection between the slave and the defendants, that one cannot justly and with any (209) reasonable confidence affirm that the connection continued for four years after the last visible trace of its existence. And after the expiration of that period it may be fairly contended, I think, that, if the harboring did not continue during the whole period, it did not exist at all within it; for it is a much stronger presumption now that it did not exist, for instance, in 1843, than it was in that year, because then it might be said there were not opportunities and that time had not been allowed to discover direct proof. But, now, the negro has been taken and could point out the means of establishing the fact, if it had occurred, and there has been full scope for inquiry in other quarters for nearly six years, in all, since the latest day to which the direct proof brought down the harboring; and the *Page 155 
whole period affords not the slightest vestige of a harboring or correspondence of any kind after the autumn of 1842. If it appeared that the caves and other places of secret resort, once used by the runaway, had been still in use by some one, or that this negro had been seen in the neighborhood of the defendants, although personal intercourse might not be directly shown, there would be something for the mind to act on, and, possibly, the case might have been fit for a jury's deliberation. But, with nothing further than the naked facts, that ten years before the negro had belonged to the defendants, and that four years before they had entertained and concealed him, the case is too bare of proof to go to the jury. There is nothing within the time; and the previous circumstances, thus solitary and antiquated, afford a presumption too remote and inconclusive to be the ground of judicial determination.
I concur in holding that the judgment must be reversed and a venire denovo awarded.
PER CURIAM. Judgment reversed, and venire de novo.
(210)